T.C. Memo. 2020-12

UNITED STATES TAX COURT

MOISES A. AVILES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17039-18L.                    Filed January 15, 2020.

Moises A. Aviles, pro se.

<u>Sheri A. Wight</u>, <u>Hans Famularo</u>, and <u>Kim-Khanh Nguyen</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of a determination by

_____

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2] the Internal Revenue Service (IRS or respondent) to uphold collection actions. The questions for decision are (1) whether petitioner may challenge his underlying tax liabilities in this Court and (2) whether the settlement officer abused her discretion in denying petitioner's request for currently not collectible (CNC) status or (in the alternative) an installment agreement (IA). Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determinations to sustain the proposed collection actions were proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached affidavits and exhibits. Petitioner resided in California when he timely filed his petition.

Petitioner is a self-employed attorney. For 2012-2016 he filed Federal income tax returns, reporting a tax due for each year. For each year he failed to pay, through estimated tax payments or otherwise, the tax shown as due on his return. For each year the IRS assessed the tax shown as due.

In an effort to collect petitioner's unpaid liabilities the IRS proceeded with two collection actions. On December 12, 2017, it sent him a Notice of Federal

[*3] Tax Lien Filing and Your Right to a Hearing (lien notice) for tax years 2012-2015. On January 9, 2018, it sent him a notice of intent to levy (levy notice) covering tax years 2012-2016. As of the latter date the IRS had assessed interest on the deficiencies and additions to tax under section 6651(a)(2), so that petitioner's outstanding tax liability for the five years totaled $71,519.

In response to these notices petitioner timely submitted separate Forms 12153, Request for a Collection Due Process or Equivalent Hearing. On both forms he stated that he could not pay the balance due and asked that the IRS provide him with "an accounting" of his payments for each year. On neither form did he indicate an intention to challenge his underlying tax liability for any period.

Petitioner's hearing request with respect to the lien notice was assigned to a settlement officer (SO1) in the IRS Appeals Office in Memphis, Tennessee, and his hearing request with respect to the levy notice was assigned to a settlement officer (SO2) in a different IRS office. The SOs conferred, and SO2 agreed to transfer the levy case to SO1. Before doing so, SO2 verified that petitioner's tax liabilities for 2012-2016 had been properly assessed and that all other legal and administrative requirements had been satisfied.

Upon receiving the entire case, SO1 reconfirmed that the assessments were proper and that all legal and administrative requirements had been met. On April

[*4] 12, 2018, SO1 scheduled a telephone conference for May 17, 2018, to address both notices. SO1 advised petitioner that, in order for her to consider a collection alternative, he would need to provide: (1) a copy of his Federal income tax return for 2017; (2) verification of estimated tax payments for 2018; and (3) a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting financial information.

On May 8, 2018, petitioner sent SO1 a letter stating that he had not yet filed his 2017 return but attaching copies of invoices for business expenses he had incurred during 2017 and 2018. He supplied no evidence that he had received an extension of time to file his 2017 return. He did not enclose a completed Form 433-A and did not substantiate payment of any estimated tax for 2018.

On May 17, 2018, SO1 called petitioner for the scheduled hearing, but he was not available. SO1 left him a voice message, to which he did not respond. On May 22, 2018, SO1 sent him a "last chance" letter noting that he had missed the scheduled conference and instructing him to send her, within 14 days, any information that he wished her to consider.

On May 31, 2018, SO1 received from petitioner a partially completed Form 433-A, which left empty the portion of the form regarding his monthly income and expenses. On June 14, 2018, SO1 called petitioner and instructed him to submit a

**[*5]** fully completed Form 433-A by June 18, 2018, which he did. Taking petitioner's self-reported income and expenses at face value, SO1 determined that he could pay at least $383 per month toward his tax liabilities and was thus ineligible for CNC status. Petitioner did not make a specific IA proposal during the CDP hearing, and SO1 noted that he would be ineligible for such relief in any event because IRS records showed that had made no estimated tax payments for 2018.

On July 30, 2018, SO1 issued to petitioner notices of determination sustaining the two proposed collection actions. Petitioner timely petitioned this Court for review, asserting that "an accounting should be done" as to what he owed and that, after this accounting, he "would owe a lesser amount." He also contended that SO1 erred in denying him CNC status or (in the alternative) an IA.

On October 11, 2019, respondent filed a motion for summary judgment contending that the proper standard of review is abuse of discretion and that SO1 did not abuse her discretion in any respect. Petitioner opposed that motion, contending that de novo review is required. He addressed only the applicable standard of review and alleged no facts showing a genuine dispute for trial.

**[\*6]** <u>Discussion</u>

A.    <u>Summary Judgment Standard</u>

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). Under Rule 121(b) we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. <u>Ibid.</u> However, the nonmoving party may not rest upon the mere allegations or denials in his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); <u>see</u> <u>Sundstrand Corp.</u>, 98 T.C. at 520. Petitioner has not identified any material fact in dispute, and we find that this case is appropriate for summary adjudication.

B.    <u>Standard of Review</u>

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that we should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity or amount of the taxpayer's underlying liability is at

[*7] issue, we review the Commissioner's determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not properly before us, we review the IRS action for abuse of discretion. <u>Id.</u> at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

C.    <u>Underlying Tax Liabilities</u>

A taxpayer may challenge the existence or amount of his underlying liability in a CDP proceeding only "if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute * * * [it]." Sec. 6330(c)(2)(B). Petitioner was entitled at the CDP hearing to dispute the tax liabilities as reported on his 2012-2016 returns, because he did not have a prior opportunity to dispute them. <u>See</u> <u>ibid.</u>; <u>Montgomery v. Commissioner</u>, 122 T.C. 1, 8-9 (2004) (noting that a taxpayer may dispute his underlying liability where he had reported the liability on his return).

However, a taxpayer must properly present an underlying liability challenge at the CDP hearing in order to preserve that challenge for judicial review. <u>See</u> <u>Thompson v. Commissioner</u>, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP

**[*8]** hearing."); <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 113-114 (2007) (same); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. "'An issue is not properly raised if the taxpayer fails * * * to present * * * any evidence with respect to that issue after being given a reasonable opportunity to' do so." <u>Moriarty v. Commissioner</u>, T.C. Memo. 2017-204, 114 T.C.M. (CCH) 441, 443 (quoting section 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.), <u>aff'd per order</u>, 2018 WL 4924349 (6th Cir. Sept. 19, 2018); <u>see</u> <u>Obeirne v. Commissioner</u>, T.C. Memo. 2018-210, at *9.

Petitioner did not raise at the CDP hearing a proper challenge to his underlying tax liabilities for 2012-2016. He submitted no amended returns showing what he believed his correct tax liabilities to be. Nor did he submit any other evidence relevant to those liabilities; the invoices attached to his May 8, 2018, letter related to expenses he incurred in 2017 and 2018. His vague request that the IRS provide him "an accounting" of his tax payments was insufficient to raise a cognizable underlying liability challenge.

Petitioner does not contend that he properly challenged his underlying liabilities during the CDP hearing. Rather, he asks that we revisit our holding in <u>Giamelli</u>, 129 T.C. at 113-114, to the effect that an Appeals Office challenge is required in order to preserve this issue for judicial review. We are not inclined to do

**[\*9]** so.  We have repeatedly relied on <u>Giamelli</u> for the proposition that a taxpayer must dispute his underlying liability in the CDP hearing to preserve that argument for this Court's review.  <u>See, e.g.</u>, <u>Carpenter v. Commissioner</u>, 152 T.C. 202, 220 (2019), <u>aff'd</u>, __ F. App'x. __ (4th Cir. Dec. 19, 2019); <u>Klein v. Commissioner</u>, 149 T.C. 341, 349 (2017); <u>LG Kendrick, LLC v. Commissioner</u>, 146 T.C. 17, 34 (2016), <u>aff'd</u>, 684 F. App'x 744 (10th Cir. 2017); <u>Kraft v. Commissioner</u>, 142 T.C. 259, 265 (2014); <u>Thompson</u>, 140 T.C. at 178.

Petitioner notes that, in an Opinion issued before <u>Giamelli</u>, we stated that the Appeals Office generally would not abuse its discretion "in failing to consider arguments, issues, or other matter not raised by taxpayers or not otherwise brought to the attention of respondent's Appeals Office."  <u>Magana v. Commissioner</u>, 118 T.C. 488, 493 (2002).  This statement concerned abuse-of-discretion review of collection alternatives; it did not address the conditions attending de novo review of underlying tax liabilities.  <u>See id.</u> at 492-493.  In any event the taxpayer in <u>Gia-melli</u> advanced the same argument petitioner makes here, and we rejected it.  <u>See</u> <u>Giamelli</u>, 129 T.C. at 115 (citing <u>Magana</u>, 118 T.C. at 493).  We decline to revisit our holding in <u>Giamelli</u> and accordingly hold that SO1's actions are reviewable for abuse of discretion only.  <u>See Goza</u>, 114 T.C. at 182.

**[*10] D.** <u>Abuse of Discretion</u>

In reviewing an SO's determinations we consider whether she: (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." <u>See</u> sec. 6330(c)(3). Our review of the record establishes that the SOs properly discharged all of their responsibilities under section 6330(c).

In his hearing request petitioner sought CNC status and (in the alternative) an IA. To be entitled to have his account placed into CNC status, the taxpayer must demonstrate that, on the basis of his assets, equity, income, and expenses, he has no apparent ability to make payments on the outstanding tax liability. <u>See</u> <u>Foley v. Commissioner</u>, T.C. Memo. 2007-242, 94 T.C.M. (CCH) 210, 212; Internal Revenue Manual (IRM) pt. 5.16.1.1 (Aug. 25, 2014). A taxpayer's ability to make payments is determined by calculating the excess of income over necessary living expenses. <u>Rosendale v. Commissioner</u>, T.C. Memo. 2018-99, at *9; IRM pt. 5.16.1.2 (Jan. 1, 2016). Petitioner's Form 433-A showed that his monthly income exceeded his monthly expenses by $383. If we assume arguendo that he

[*11] could have verified all of his reported expenses, he would still fail to qualify for CNC status, and SO1 did not err in so concluding.

Nor did SO1 abuse her discretion in declining to consider an IA. Petitioner made no concrete IA proposal during the CDP hearing, and SO1 was not obligated to propose one for him. See Gentile v. Commissioner, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77, aff'd, 592 F. App'x 824 (11th Cir. 2014); Veneziano v. Commissioner, T.C. Memo. 2011-160, 102 T.C.M. (CCH) 22, 24.[2]

In any event, petitioner supplied no evidence that he had filed a return for 2017, that he had received an extension to file that return, or that he had made estimated tax payments for 2018. SO1 could properly have declined to consider an IA for those reasons alone. See Giamelli, 129 T.C. at 111-112; Starkman v. Commissioner, T.C. Memo. 2012-236; IRM pt. 5.14.1.4.2(18) (Sept. 19, 2014) ("Compliance with filing * * * [and] paying estimated taxes * * * must be current from the date the installment agreement begins."). The requirement of current compliance as a condition of executing an IA "ensures that current taxes are paid

_____

[2]The record indicates that petitioner previously had an IA, which was suspended in December 2015 because of his default, and that he had called the IRS in March 2017 with a request that it be reinstated. He mentioned during the CDP hearing that he had received no response to his request. But he made no specific IA proposal to SO1, and she could not have abused her discretion in failing to consider such relief. See Kendricks v. Commissioner, 124 T.C. 69, 79 (2005).

[*12] and avoids 'the risk of pyramiding tax liability.'" Hull v. Commissioner, T.C. Memo. 2015-86, 109 T.C.M. (CCH) 1438, 1441 (quoting Schwartz v. Commissioner, T.C. Memo. 2007-155, slip op. at 8). Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and sustain the proposed collection actions.[3]

To reflect the foregoing,

An appropriate order and decision

will be entered for respondent.

---

[3]In his response to the summary judgment motion petitioner implies that his financial circumstances may have changed since the notices of determination were issued. If so, he is free to submit to the IRS at any time, for its consideration and possible acceptance, a proposed collection alternative supported by the required financial information.