# United States Tax Court

T.C. Memo. 2025-84

TISHA S. HILLMAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 9829-24L.                              Filed August 6, 2025.

———————

Tisha S. Hillman, pro se.

*Alexis T. Locklear*, *Victoria E. Cvek*, and *Amanda K. Bartmann*, for respondent.

MEMORANDUM OPINION

WAY, *Judge*: In this collection due process (CDP) case, petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of a determination by the Internal Revenue Service (IRS or respondent) to uphold a Notice of Federal Tax Lien (NFTL) filing. The Notice relates to petitioner's unpaid tax liabilities for 2016–19 (years at issue). Respondent has filed a Motion for Summary Judgment (Motion) under Rule 121, contending that an officer from the IRS Independent Office of Appeals (Appeals) did not abuse her discretion in sustaining the NFTL filing. Finding that there exist no disputes of material fact on this point, the Court will grant the Motion.

———

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts have been rounded to the nearest dollar.

**[\*2]**                                      *Background*

The following facts are drawn from the parties' pleadings and Motion papers (with attached Exhibits and supporting Memoranda), and the Administrative Record[2] of the CDP proceeding. *See* Rule 121(c). They are stated solely for the purpose of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in Maryland when she timely petitioned this Court.[3]

I.     *Petitioner's Tax Liabilities*

Petitioner, an attorney, filed her federal income tax returns for the years at issue on June 18, 2018, February 18, 2019, June 3, 2019, and August 17, 2020, respectively. She did not pay the amounts shown as due on these returns. The IRS assessed these amounts along with the applicable additions to tax under section 6651(a)(1) and (2).

When petitioner did not pay her tax liabilities upon notice and demand, the IRS took several collection-related steps in quick succession. On April 27, 2023, the IRS sent petitioner a Notice of Intent to Levy and Your Right to a Hearing (Levy Notice), informing petitioner that, with interest and penalties, she owed $43,091 and had until May 27, 2023, to request a CDP hearing. On May 2, 2023, an IRS employee prepared and signed the NFTL for the years at issue. On May 11, 2023, the IRS issued petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing (Lien Notice), notifying her of the filing of the NFTL.

Following receipt of these Notices, on May 26, 2023, petitioner timely mailed a request for a CDP hearing. In that request, petitioner stated that she was not liable for the tax the IRS was trying to collect and requested that the NFTL be withdrawn. Importantly, petitioner did

---

[2] In her Response to the Motion for Summary Judgment petitioner attempts to question the validity of the Administrative Record on account of her not having previously viewed many of the documents it comprises before its filing on January 2, 2025. The Court finds this argument unavailing because petitioner had the opportunity to file with respondent a stipulated Administrative Record in accordance with Rule 93(a) but failed to do so, and she did not otherwise object to respondent's filing of the record before the filing of the Motion. *See Hartmann v. Commissioner*, T.C. Memo. 2024-46, at \*8 (accepting the Administrative Record filed by the Commissioner pursuant to Rule 93(b) because the taxpayer failed to argue that it was incomplete or should be supplemented), *aff'd*, No. 24-2289, 2025 WL 213765 (3d Cir. Jan. 16, 2025).

[3] Absent stipulation to the contrary, this case is thus appealable to the U.S. Court of Appeals for the Fourth Circuit. § 7482(b)(1)(G), (2).

[*3] not check the box requesting a hearing regarding the Levy Notice. On June 13 and 14, 2023, the IRS processed levies on petitioner's assets. Petitioner subsequently raised the issue of these levies with the IRS, at which time she was informed that she could have an equivalent hearing for the levies but that the time for a CDP hearing on the levies had run out. After a number of months, the levies were lifted.

II.      *The Collection Proceedings*

Petitioner's hearing was assigned to IRS Appeals Officer Sarah Valdez (AO Valdez), who had no prior involvement with respect to the taxpayer at either Appeals or at any other IRS office for the types of taxes and tax years at issue. Upon being assigned the case, AO Valdez confirmed that there was a valid assessment and that the notice and demand for payment had been properly sent. She also confirmed that there was a balance due when the NFTL was filed and that a notice of a right to a section 6320 hearing had been properly issued.

On September 13, 2023, AO Valdez sent petitioner a letter scheduling a CDP hearing for October 11, 2023, to be conducted by telephone. In addition to scheduling the date and time for the hearing, the letter requested that petitioner send (1) Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, (2) Form 656, Offer in Compromise, and supporting documentation, and (3) copies of her signed individual tax returns for tax years 2020 through 2022. The letter further noted that petitioner's tax liabilities were the result of her self-filed returns and that if such liabilities were incorrect, petitioner would need to file amended returns for consideration at the CDP hearing. No amended returns were filed for the years at issue.

The CDP hearing was held on October 11, 2023, and petitioner, through her attorney, was present and was heard. Petitioner indicated her desire for an installment agreement as a collection alternative, abandoning her request that the NFTL be withdrawn. AO Valdez stated that petitioner would need to submit financial information and come into compliance with her 2020–22 filing obligations before an installment agreement could be considered. Potential hardships caused by respondent's levy were also discussed at the hearing, and AO Valdez informed petitioner of the required documents that would need to be submitted to substantiate these hardships.

**[\*4]** On various days in December 2023 petitioner provided AO Valdez with a completed Form 433–A, copies of her 2020–22 tax returns, bank statements, and other financial records. The financial records showed petitioner's ownership of a legal consulting business, $9,000 in monthly income, $6,890 in monthly expenses, and $178,000 of home equity. Petitioner's financial records also indicated the filing of a previous bankruptcy petition but lacked documentation to substantiate it.

On February 15, 2024, an IRS revenue officer (RO) conducted a financial analysis of petitioner's assets, income, and liabilities to address her CDP request. The RO concluded that, on the basis of her monthly income and home equity, petitioner could pay monthly installments of $6,954 toward her tax liabilities. The RO assumed in this analysis that petitioner would borrow against the equity in her home to help fund these installments.

AO Valdez considered both this recommendation and petitioner's arguments raised during the hearing. AO Valdez agreed that, because of her poor credit score, petitioner could not reach the value of her home equity and thus could not afford to pay the monthly amount the RO recommended. AO Valdez instead offered on March 29, 2024, two alternative installment agreements with lower monthly payment amounts. She gave petitioner until April 29, 2024, to respond with a signed agreement. At the request of petitioner's attorney, AO Valdez extended the due date until May 7, 2024. No signed agreement was returned, nor was an alternative proposed.

Having not received an acceptance of either alternative installment agreement, AO Valdez issued a Notice of Determination sustaining the NFTL filing on May 15, 2024. The Notice explained that the NFTL filing was being sustained because petitioner did not accept either of the installment agreement options. Although petitioner had challenged her underlying tax liabilities, the Notice explained that such liabilities reflected amounts listed on tax returns she herself had filed. The Notice further noted that petitioner had been provided with an opportunity to file amended returns to correct the liabilities but had not done so.

**[*5]** *Discussion*

I. *General Principles*

A. *Background*

When a person fails to pay any tax after the IRS demands payment, section 6321 automatically imposes a tax lien on the taxpayer's property or property rights. The lien is treated as arising from the time of assessment. *See* § 6322. To perfect this lien, the IRS must file an NFTL, generally in the county where the taxpayer's property is situated. *See* § 6323(a), (f)(1). Section 6320 requires the IRS to send notice to the taxpayer that it has filed the NFTL. *See* § 6320(a)(1) and (2). This notice must also inform the taxpayer of the taxpayer's right to request a hearing. *See* § 6320(a)(3)(B). At the hearing, the taxpayer may raise any relevant issue relating to the unpaid tax or the lien, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives. *See* §§ 6320(c), 6330(c)(2). The taxpayer may also challenge at the hearing the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability. *See* §§ 6320(c), 6330(c)(2). The determination by an IRS Appeals officer must take into consideration the relevant issues raised by the taxpayer, as well as verification that the requirements of any applicable law or administrative procedure have been met and whether any proposed collection action balances the need for the efficient collection of tax with the legitimate concern of the person that any collection action be no more intrusive than necessary. *See* §§ 6320(c), 6330(c)(3).

B. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). The Court may grant summary judgment when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2). In deciding whether to grant a motion for summary judgment, the Court is to view factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The Court concludes that summary judgment is proper here because respondent

[*6] has shown that there are no genuine disputes as to any material fact. *See Beery v. Commissioner*, 122 T.C. 184, 187 (2004).

### C. *Jurisdiction and Standard of Review*

The Court has jurisdiction to review appeals from the Commissioner's determinations in lien and levy actions. *See* §§ 6320(c), 6330(d)(1). Where the validity of the underlying tax liability is properly at issue, the Court reviews the determination regarding such liability de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). All other determinations are reviewed for abuse of discretion. *Sego*, 114 T.C. at 610; *Goza*, 114 T.C. at 182.

In reviewing for abuse of discretion, the Court must uphold the AO's determination unless it is arbitrary, capricious, or without sound basis in fact or law. *See, e.g.*, *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006); *L.G. Kendrick, LLC v. Commissioner*, T.C. Memo. 2016-22, at *11–12, *aff'd*, 684 F. App'x 744 (10th Cir. 2017). Matters raised after a hearing do not reflect on whether the Commissioner's determinations were an abuse of discretion. *Sego*, 114 T.C. at 612.

## II. *Analysis*

### A. *Underlying Tax Liability*

Petitioner argues that respondent erred by asserting in his Motion that petitioner owes outstanding liabilities. Petitioner could have challenged her underlying liabilities at the CDP hearing if she had not received a statutory Notice of Deficiency for those liabilities or otherwise had an opportunity to dispute them. *See* §§ 6320(c), 6330(c)(2)(B). Because petitioner filed her individual income tax returns for the years at issue with reported but unpaid liabilities, she effectively "self-assessed" the liabilities, and thus respondent did not issue her a Notice of Deficiency. *See* § 6201(a)(1); *see also Montgomery v. Commissioner*, 122 T.C. 1, 7–9 (2004).

In her September 13, 2023, letter to petitioner, AO Valdez explained to petitioner that the tax liabilities at issue resulted from petitioner's self-filed tax returns. AO Valdez indicated that if the liabilities shown on those returns were incorrect, petitioner would need to file amended returns for consideration in the CDP process. Despite having been presented with this explanation and opportunity, petitioner

**[\*7]** did not amend her returns. Thus, petitioner did not properly raise an underlying liability challenge and, consequently, that issue is not properly before this Court. *See Mamadou v. Commissioner*, T.C. Memo. 2022-121, at \*7–8 ("[T]axpayer must explain what he believes his correct tax liability to be and supply the [settlement officer] with some evidence to support that position."); *Aviles v. Commissioner*, T.C. Memo. 2020-12, at \*7–9 (finding no proper challenge to underlying tax liabilities where no amended returns or other evidence relevant to the taxpayer's tax liabilities were submitted at the CDP hearing); *cf. Dodd v. Commissioner*, T.C. Memo. 2019-107, at \*9–10 (denying summary judgment where IRS settlement officer's letter did not indicate that the taxpayer's failure to submit an amended return would preclude a challenge to the underlying liability).

## B. *Abuse of Discretion*

The Court now considers the actions taken by AO Valdez at the CDP hearing and subsequently. In deciding whether an AO abused her discretion, the Court considers whether she (1) properly verified that the requirements of applicable law or administrative procedure were met, (2) considered relevant issues the taxpayer raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." § 6330(c)(3); *see* § 6320(c); *Casement v. Commissioner,* T.C. Memo. 2024-68, at \*7.

### 1. *Verification*

The Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised the issue at the section 6320 hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 200–03 (2008), *supplemented by* 136 T.C. 463 (2011). AO Valdez confirmed that there was a valid assessment, that the notice and demand for payment was properly sent, that there was a balance due when the NFTL was requested, that notice of a right to a section 6320 hearing was properly issued, and that she had no prior involvement with petitioner with respect to the types of tax or periods at issue.

Petitioner argues that the IRS abused its discretion because it failed to follow all of the CDP legal and procedural requirements to which she was entitled. Specifically, she complains that the IRS filed a lien against her home just four days after sending her the Levy Notice describing her CDP rights. She argues that imposing a lien before she

[*8] even had time to appeal violated her CDP rights. She makes a similar argument with respect to the levies imposed by the IRS, suggesting that her request for a hearing should have stayed those levies. She also argues that the collection alternatives presented to her were unrealistic given her income and assets.

Regarding her first argument, it is important to note that the Code does not even afford a taxpayer a right to a CDP hearing to contest an NFTL until after the government has in fact filed the NFTL. *See* § 6320(a) (describing the manner in which a taxpayer is notified of an NFTL filing under section 6323 and the period during which that taxpayer may request a CDP hearing). This is in contrast to requesting a CDP hearing to contest a levy under section 6330, which explicitly forbids the IRS from levying on a taxpayer's property before notifying the taxpayer in writing of the right to a CDP hearing and permitting the hearing to occur. § 6330(a)(1). Thus, petitioner's argument that her CDP rights were violated because an NFTL was filed before she had a hearing is without merit.

Petitioner's argument that the IRS imposed levies on her without conducting a prior CDP hearing is similarly without merit. Petitioner never requested a CDP hearing with respect to the Notice of Intent to Levy. The only box she checked on the form requesting a CDP hearing related to the Notice of Federal Tax Lien. Petitioner was subsequently offered an equivalent hearing with respect to the levies, but the outcome of an equivalent hearing may not be contested in this Court. *See Ruhaak v. Commissioner*, 157 T.C. 103, 111 (2021). Petitioner's complaints about the IRS levy process are therefore beyond the scope of our review.

Petitioner has not credibly challenged any aspect of AO Valdez's verification that all legal and administrative requirements were met. The Court concludes that AO Valdez properly verified that all of the applicable requirements were met.

2.      *Issue Raised*

The primary issue raised by petitioner and considered at the CDP hearing concerned collection alternatives. A taxpayer may raise collection alternatives during a CDP hearing. § 6330(c)(2)(A)(iii). One of the alternatives potentially available to a taxpayer is an installment agreement. *Id.*; Treas. Reg. § 301.6320-1(e)(3), Q&A-E6.

Petitioner requested an installment agreement at the CDP hearing. AO Valdez, using the information from petitioner's submitted

[*9] Form 433–A, offered petitioner two installment agreement alternatives with lower monthly payments than those recommended by the RO. These lower amounts accounted for the fact that petitioner had poor credit and could not access the equity in her home. AO Valdez gave petitioner more than a month to accept one of these offers, and she extended the time to respond at petitioner's request before issuing the Notice of Determination sustaining the NFTL filing.

Petitioner avers that there was no "meeting of the minds" regarding the installment agreement; indeed, the record clearly shows that petitioner neither accepted one of the proffered installment agreements nor proposed an alternative before the deadline prescribed by AO Valdez. There is no abuse of discretion in closing a CDP case after receiving no response from a taxpayer following the setting of a reasonable deadline. *See Shanley v. Commissioner,* T.C. Memo. 2009-17, 97 T.C.M. (CCH) 1062, 1065–66.

### 3.  *Balancing*

Section 6330(c)(3)(C) requires Appeals to take into consideration whether a proposed collection action balances the need for efficient tax collection with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. In this regard the letter sent to petitioner on September 13, 2023, indicates that AO Valdez sought the documentation necessary to support a collection alternative. Moreover, AO Valdez considered petitioner's arguments, agreeing with petitioner that, because of her poor credit score, petitioner could not reach the value of her home equity and thus could not afford to pay the monthly amount the RO recommended. That AO Valdez offered petitioner two installment agreement options further shows her efforts to balance the IRS's needs with those of petitioner. The Court finds these efforts sufficient.

## III.  *Conclusion*

The Court finds that respondent did not abuse his discretion in sustaining the collection action and will therefore grant his Motion. All other contentions raised by the parties—to the extent not discussed— are found to be irrelevant, moot, or without merit.[4]

---

[4] This is especially the case for petitioner's argument concerning the application of the Thirteenth Amendment and her demand for the Court to order $48

**[\*10]**  To reflect the foregoing,

*An appropriate order and decision will be entered for respondent.*

---

million in sanctions against respondent. Petitioner, who the record indicates has a legal education, is warned that the Court is authorized under section 6673(a)(1) to impose a penalty not exceeding $25,000 whenever a taxpayer's position in a proceeding is frivolous or groundless. *See Toth v. Commissioner*, T.C. Memo. 2013-142. Petitioner is therefore cautioned that a penalty may be imposed in any future case before this Court should she continue to pursue frivolous positions. The Court declines to impose sanctions against respondent.